[Cite as *In re C.O.*, 2013-Ohio-5239.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 99334 and 99335**

---

# IN RE: C.O., ET AL.

# Minor Children

[Appeal By Mother]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 12914245 and AD 12914246

**BEFORE:** Keough, J., Stewart, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEY FOR APPELLANT**

Brian S. Schick
1516 Sunview Road
Lyndhurst, Ohio 44124

**ATTORNEYS FOR APPELLEES**

Patrick J. O'Malley
6200 Rockside Woods North
Suite 204
Independence, Ohio 44131

**ATTORNEY FOR MINOR CHILDREN**

Martin Keenan
Buckeye Legal Center
11510 Buckeye Road
Cleveland, Ohio 44101

**GUARDIAN AD LITEM**

Mary Bush
9373 King's Hollow Court
Mentor, Ohio 44060

**FOR CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES**

Yvonne C. Billingsley
Cuyahoga County Department of Children and Family Services
3955 Euclid Avenue, Room 305E
Cleveland, Ohio    44115

KATHLEEN ANN KEOUGH, J.:

{¶1} Appellant, Vicki O'Malley ("Mother"), mother and as next friend of her minor children, P.O. and C.O., appeals the trial court's decision dismissing her children's complaint that requested a finding of neglect under R.C. 2151.03(A)(3) or dependency under R.C. 2151.04(C). For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On August 28, 2012, P.O. and C.O. (hereinafter "children"), through counsel, filed a complaint for dependency and neglect and requested that temporary custody be granted to the Cuyahoga County Department of Children and Family Services ("CCDCFS") or in the alternative, legal custody to their mother. The complaint was filed approximately one month after the children were informed that the domestic relations court had granted custody to their father, Patrick O'Malley ("Father"). The basis for the complaint was that the children threatened to harm themselves if they were removed from their mother's custody and placed in the custody of their father. Attached to the complaint was an affidavit signed by Mother alleging that Father had failed to enroll the children in school and "sign his children in treatment." The complaint and affidavit requested that the children remain with Mother or that they be placed in the temporary custody of CCDCFS until their best interests could be determined.

**{¶3}** Following an evidentiary hearing, the trial court dismissed the complaint, stating that the children had failed to prove that they were dependent or neglected as defined under the law.

**{¶4}** Mother appeals, raising five assignments of error, which will be addressed together where appropriate.

Procedural Due Process

**{¶5}** In her first assignment of error, Mother contends that the trial court erred by denying the children procedural due process because (1) the children were not given an opportunity to present evidence at the hearing; (2) the guardian ad litem's report was fundamentally inadequate because the guardian ad litem failed to interview the children in the presence of either parent and failed to visit Father's home; and (3) the trial court failed to conduct an in camera interview with the children.

**{¶6}** The right to procedural due process is required by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution. *State ex rel. Plain Dealer Publishing Co. v. Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, ¶ 45. Procedural due process requires the government to give reasonable notice and a meaningful opportunity to be heard to those whose interests in life, liberty, or property are adversely affected by a governmental action. *Atkinson v. Grumman Ohio Corp.*, 37 Ohio St.3d 80, 85, 523 N.E.2d 851 (1988); *Crist v. Battle Run Fire Dist.*, 115

Ohio App.3d 191, 197, 684 N.E.2d 1296 (3d Dist.1996). The opportunity to be heard must occur at a meaningful time and in a meaningful manner. *Floyd* at ¶ 45.

{¶7} Contrary to Mother's argument, the children, by and through their attorney, were given an opportunity to be heard at the hearing. Their counsel presented their case through testimony and evidence at the hearing, attempting to satisfy their burden of proving that they were dependent and neglected children. Accordingly, their procedural due process rights were not violated.

{¶8} Moreover, we find unpersuasive Mother's argument that the children's due process rights were further violated because the guardian ad litem's report and investigation were fundamentally inadequate; thus preventing the children from placing their evidence on the record. Mother confuses the roles of the guardian ad litem and the children's attorney.

{¶9} "The roles of guardian ad litem and attorney are different." *In re Janie M.*, 131 Ohio App.3d 637, 639, 723 N.E.2d 191 (6th Dist.1999). The role of the guardian ad litem is to "assist a court in its determination of a child's best interest" by providing the court with relevant information and "an informed recommendation" about the children's best interest. *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶ 11, citing Sup.R. 48; *see also In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985).

{¶10} The children's "attorney is an advocate for the child, and is ethically bound to 'abide by [the child's] decisions concerning the objectives of representation * * *.'" *D.W. v. T.R.*, 6th Dist. Lucas No. L-11-1099, 2012-Ohio-614, ¶ 22, quoting Prof.Cond.R. 1.2(a). Therefore, the guardian ad litem recommends what is in the children's best interest and the attorney advocates the children's wishes. The record before this court demonstrates that the children's wishes were known and heard by the court through their attorney, thus affording the children due process.

{¶11} Finally, the trial court's failure to conduct an in camera interview with the children did not violate their due process rights because, as will be discussed under Mother's third assignment of error, the interview would only become relevant in making a best interests determination for disposition. Because the trial court found that an adjudication of neglect or dependency was not proper, a best interests determination was unnecessary.

{¶12} Therefore, the children were not denied their right to procedural due process and Mother's first assignment of error is overruled.

Guardian Ad Litem Report

{¶13} In her second assignment of error, Mother contends that the trial court committed plain error by accepting and relying on the report of the guardian ad litem because the guardian ad litem did not perform her duties pursuant to the minimum standards set forth in Sup.R. 48(D)(13).

{¶14} "Sup.R. 48 provides, at the least, good guidelines for the conduct of a guardian ad litem in meeting his or her responsibilities in representing the best interest of a child in order to provide the court with relevant information and an informed recommendation." *In re K.G.*, 9th Dist. Wayne No. 10CA16, 2010-Ohio-4399, ¶ 12. "Ohio appellate courts have indicated that the Rules of Superintendence are general guidelines for the conduct of the courts and do not create substantive rights in individuals or procedural law." *Id.* at ¶ 11, citing *Sultaana v. Giant Eagle*, 8th Dist. Cuyahoga No. 90294, 2008-Ohio-3658, ¶ 45. In fact, at least two appellate courts have examined Sup.R. 48 and both courts concluded that the guardian ad litem's failure to comply with the rule did not constitute grounds for reversal. *See In re K.G.*; *Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475.

{¶15} None of the parties objected to the guardian ad litem's report. Accordingly, this assignment of error is reviewed only for plain error. The doctrine of plain error is limited to those rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and if the error is left uncorrected, it would have a materially adverse effect on the character of, and public confidence in, judicial proceedings. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 1997-Ohio-401, 679 N.E.2d 1099.

{¶16} Mother contends that the guardian ad litem did not perform her duties pursuant to the minimum standards set forth in Sup.R. 48(D)(13) because the guardian ad

litem failed to interview the children with either parent, particularly with Father, or visit Father's home.

{¶17} In support of her argument, Mother cites to *Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736. In *Nolan*, father objected to mother's request to terminate the shared parenting plan and to designate her as the child's residential parent. The trial court appointed a guardian ad litem to conduct an investigation and prepare a report regarding the child's best interest. The evidence demonstrated that the guardian ad litem conducted a limited investigation and failed to conduct interviews with the key individuals in the case, including the child, mother's live-in boyfriend, the child's half-sister, school personnel, and medical-health providers. Furthermore, the guardian ad litem did not visit the homes of either mother or father. Nevertheless, the guardian ad litem testified and recommended that it would be in the child's best interest to terminate the shared parenting plan and designate mother as residential custodian. Based on the guardian ad litem's recommendation, the trial court granted mother's request.

{¶18} Father appealed, arguing that the guardian ad litem's investigation should have been stricken because the investigation was below the minimum standards set forth in Sup.R. 48. The Fourth District agreed and reversed the trial court's decision, stating that while the Rules of Superintendence are general guidelines for a guardian ad litem to follow and "do not have the force of law," Sup.R. 48 should not be ignored. *Id*. at ¶ 26-27. The court determined that based on the unique facts of the case, the guardian ad

litem's investigation was inadequate and fell below the minimum standards of Sup.R. 48(D)(13); thus, the testimony and report was not competent and credible evidence of the child's best interest and should not have been relied on by the court. *Id.*

{¶19} Mother's reliance on *Nolan* is misplaced. First, and most importantly, the *Nolan* decision was fact specific. *Id.* at ¶ 26-27. Second, in this case, the trial court did not rely on the guardian ad litem's report to make a best interest determination because no such determination was necessary based on the children's inability to satisfy their burden that they were neglected or dependent. These factors alone make *Nolan* distinguishable.

{¶20} Furthermore, the trial court's written opinion references the guardian ad litem's report for the limited purpose of stating "that the children are progressing in counseling and adjusting to their Father's home. This demonstrates that the steps Father is taking in connection with the children's therapy is having a positive effect on their mental health." This statement corroborates the testimony at the hearing that Father was addressing the children's mental health needs, which was contrary to the allegation in the complaint for dependency and neglect.

{¶21} Finally, the trial court noted that the guardian ad litem's report was "pretty thorough given the turn around time that the [guardian ad litem] had to provide it to the court." We agree. Based on the facts and circumstances of the case, the guardian ad litem's report was within the guidelines of Sup.R. 48 and the trial court's limited reliance on the report was not plain error.

**{¶22}** Mother's second assignment of error is overruled.

In Camera Interview

**{¶23}** R.C. 3109.04(B)(1) provides, in relevant part,

In determining the *child's best interest* for the purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issue related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation. (Emphasis added.)

**{¶24}** In this case, the attorneys for both Mother and the children moved the court to conduct an in camera interview with the children. The trial judge denied the motion, but stated she would reconsider the motion based on the evidence and testimony presented during the course of the hearing. At the close of evidence, a renewed motion for an in camera interview with the children was made. Although the trial court did not expressly deny the motion, the court did not interview the children prior to dismissing the complaint for neglect and/or dependency. In her third assignment of error, Mother contends that the court committed reversible error in failing to conduct an in camera interview to consider the children's wishes.

**{¶25}** When a trial court proceeds on an original neglect, dependency, or abuse complaint under R.C. 2151.35, it is required to bifurcate the proceedings into an adjudication and a disposition. R.C. 2151.35(B)(1); *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 233, 479 N.E.2d 257 (1985); *In re J.H.*, 12th Dist. Preble Nos. CA2005-11-019

and CA2005-11-020, 2006-Ohio- 3237, ¶ 22-27. The purpose of having separate hearings is so that the required determination of the child's best interest, which is pertinent to disposition, does not become an issue in the objective decision as to whether or not a child has been abused, neglected, or dependent. *In re Balazy*, 8th Dist. Cuyahoga No. 77553, 2001 Ohio App. LEXIS 984 (Mar. 8, 2001). Only after an adjudication of neglect or dependency is made does the judge become vested with the authority to consider the child's best interests and make a disposition. *Id.*, citing *In re Williams*, 8th Dist. Cuyahoga No. 74921, 2000 Ohio App. LEXIS 455 (Feb. 10, 2000).

{¶26} Accordingly, an in camera interview pursuant to R.C. 3109.04(B)(1) is required when making a determination of a child's best interest, which is pertinent for disposition, not for an adjudication of abuse, neglect, or dependency. Only after the trial court makes the threshold determination that a child is neglected or dependent does the court then consider a child's best interest for disposition, and R.C. 3109.04(B)(1) becomes relevant. In this case, the court dismissed the complaint, finding that the children failed to prove by clear and convincing evidence that they were neglected or dependent. Therefore, no best interest determination needed to be made, no in camera interview was required, and the trial court did not err in its decision not to conduct the interview.

{¶27} Mother's third assignment of error is overruled.

Adjudication

**{¶28}** In her fourth and fifth assignments of error, Mother contends that the trial court erred in failing to find the children neglected under R.C. 2151.03(A)(3) or dependent under R.C. 2151.04(C).

**{¶29}** R.C. 2151.35(A) requires neglect or dependency to be established by clear and convincing evidence, which is

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

**{¶30}** When an appellate court examines whether a trial court's judgment is based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Id.* Furthermore, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Moreover, deferring to the trial court on matters of credibility is "crucial" in cases involving children, "where there may be much

evident in the parties' demeanor and attitude that does not translate to the record well."

*Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

{¶31} To determine whether a child is neglected or dependent, the date on which neglect or dependency "existed must be alleged in the complaint, and the trial court must determine that the circumstance(s) which support a finding of dependency [or neglect] existed as of the date or dates alleged in the complaint." *In re Barnhart*, 4th Dist. Athens No. 02CA20, 2002-Ohio-6023, ¶ 35, citing *In re Rowland*, 2d Dist. Montgomery No. 18429, 2001 Ohio App. LEXIS 462 (Feb. 9, 2001); *see also* R.C. 2151.23(A)(1); *In re S.H.*, 12th Dist. Butler No. CA2005-01-007, 2005-Ohio-5047; *In re Hay*, 4th Dist. Lawrence No. 94 CA23, 1995 Ohio App. LEXIS 2325 (May 26, 1995).

{¶32} In this case, the children requested a finding of neglect pursuant to R.C. 2151.03(A)(3), which provides that a "neglected child" means any child "[w]hose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being."

{¶33} The underlying basis for the complaint was that the children were threatening to harm themselves if they were placed in the custody of their Father. The affidavit attached to the complaint alleged that Father had failed to enroll the children in school and that he failed to adequately address the children's mental health issues.

**{¶34}** Mother argues on appeal that Father is not providing the children with the exact type of therapy recommended by Rainbow Babies and Children's Hospital. Although the therapy the children are receiving may not seem sufficient for Mother, the record before this court supports the trial court's decision that Father is providing mental health treatment and care for the children. The children have received continued therapy and counseling through Beech Brook and nothing in the record suggests that the children have not responded to this course of counseling sufficient to warrant a finding of neglect under R.C. 2151.03(A)(3).

**{¶35}** The record also supports the trial court's decision dismissing the complaint on the basis that the children did not prove they were dependent as defined under the law.

**{¶36}** The children requested a finding of dependency pursuant to R.C. 2151.04(C), which provides that a "dependent child" means any child "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." An adjudication under R.C. 2151.04(C) requires evidence that the parent's conduct is having "an adverse impact upon the child sufficiently to warrant state intervention." *In re Burrell*, 58 Ohio St.2d 37, 39, 388 N.E.2d 738 (1979). "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." *Id*. Furthermore, an adverse impact that supports a finding of dependency and the intervention of the state must be more than an "upset" child or a

"temporary unhappiness." *In re Holzwart*, 3d Dist. Seneca Nos. 13-04-32, 13-04-33, 13-04-34 and 13-04-40, 2005-Ohio-1602, ¶ 12.

{¶37} Mother argues on appeal that the trial court erred in not finding the children dependent because (1) Father's mental health has an adverse impact on the children and their environment, and (2) the domestic relations judgment entry ordering Father to have 24-hour security camera surveillance in his house and a third party companion when he is with the children violate the children's right to privacy and have an adverse impact on their environment. These issues were not raised in the complaint as a basis for a finding of dependency; therefore, they are summarily rejected. *Kleinfeld v. Huntington Natl. Bank*, 8th Dist. Cuyahoga No. 90916, 2008-Ohio-6486, ¶ 37, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 1997-Ohio-71, 679 N.E.2d 706 (a party cannot raise new arguments for the first time on appeal).

{¶38} The record before this court shows that this complaint was merely a vehicle in an attempt to circumvent the domestic relations division order granting custody of the children to Father. Although the children reacted negatively to the news that custody was granted to Father, their actions and reactions do not rise to the level of neglect or dependency as defined under the law. "A neglect/dependency complaint should not be filed as a substitute for a custody action." *In re Riddle*, 79 Ohio St.3d 259, 265, 1997-Ohio-391, 680 N.E.2d 1227; *see also In re Reese*, 4 Ohio App.3d 59, 62, 446

N.E.2d 482 (10th Dist.1982) (in abuse, neglect, and dependency actions, the primary objective is not to decide conflicting claims of custody).

{¶39} Accordingly, there is competent and credible evidence in the record supporting the trial court's decision that the children did not withstand their burden of proof in the matter. The trial court did not err in dismissing the amended complaint for dependency and neglect filed by the children. Mother's fourth and fifth assignments of error are overruled.

{¶40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, A.J., and
EILEEN T. GALLAGHER, J., CONCUR